# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLA EMEL, | |
| Plaintiff, | CIVIL ACTION NO. 3:21-CV-01612 |
| v. | (MEHALCHICK, J.) |
| TRUEACCORD CORP., et al., | |
| Defendants. | |

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendants TrueAccord Corporation ("TrueAccord") and LVNV Funding, LLC ("LVNV") (collectively, "Defendants"). (Doc. 20). In her complaint, Plaintiff Carla Emel ("Ms. Emel") alleges Defendants violated Sections 1692e(2)(A) and e(10) of the Federal Debt Consumer Protection Act ("FDCPA"). (Doc. 1). Because the Court lacks jurisdiction to hear this matter, Defendants' motion for summary judgment shall be **GRANTED** (Doc. 20) and Ms. Emel's complaint shall be **DISMISSED**. (Doc. 1).

## 1. BACKGROUND

On August 24, 2021, Ms. Emel received an email from TrueAccord seeking to collect debt associated with an account at Plains Commerce Bank, which was later acquired by LVNV.[1] ("the Email"). (Doc. 1-1; Doc. 21, ¶ 1; Doc. 26, ¶ 1). The Email states: "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding

---

[1] The relevant factual summary is taken from the parties' statement of facts. (Doc. 21; Doc. 26).

LLC cannot sue you for it, and LVNV Funding LLC cannot report it to any credit reporting agency." (Doc. 1-1). In response to the Email, Ms. Emel sued Defendants. (Doc. 1). According to Ms. Emel, the Email should have included a disclosure informing her that a partial payment on her debt would restart the running statute of limitations. (Doc. 1, ¶¶ 32-33; Doc. 21, ¶ 3; Doc. 26, ¶¶ 4, 6). Ms. Emel alleges that without this disclosure, the Email is false, deceptive, and misleading and therefore violates Sections 1692e(2)(A) and e(10) of the FDCPA. (Doc. 21, ¶ 4; Doc. 26, ¶ 4).

On September 17, 2021, Ms. Emel filed the operative complaint against True Accord, LVNV, and John Does 1-25.[2] (Doc. 1). On September 13, 2022, Defendants filed the instant motion for summary judgment, along with a statement of facts and a brief in support. (Doc. 20; Doc. 21; Doc. 22). On November 4, 2022, Ms. Emel filed a brief in opposition and a "Response" to Defendants' statement of facts. (Doc. 25; Doc. 26). On November 18, 2022, Defendants filed a reply brief. (Doc. 27).

---

[2] "Doe defendants 'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.'" *Hindes v. F.D.I.C.*, 137 F.3d 148, 155-56 (3d Cir. 1998) (quoting *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D. Pa. 1990)) The use of Doe defendants is permissible in certain situations until "reasonable discovery permits the true defendants to be identified." *See Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir.2 009). After discovery is complete, the Court may dismiss Doe Defendants pursuant to Federal Rule of Civil Procedure 21, which provides that "on motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see McCrudden v. United States*, 763 F. App'x 142, 145 (3d Cir. 2019) (concluding that the district court did not abuse its discretion in dismissing the Doe defendants after discovery was complete). Here, Ms. Emel has had adequate time to conduct discovery. She has not, however, identified John Does 1-25. Thus, in dismissing her complaint, the Court will dismiss John Does 1-25 from this action.

On February 12, 2024, this case was reassigned to the undersigned District Judge. Oral argument was subsequently held on March 19, 2024. (Doc. 31). At oral argument, the Court requested supplemental briefing on the issue of standing.[3] The parties subsequently filed supplemental memorandums and replies. (Doc. 29; Doc. 30; Doc. 31; Doc. 32). Ms. Emel also submitted an affidavit titled "Affidavit of Carla Emel in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment." (Doc. 30-1). Accordingly, this matter is now ripe for discussion.

## 2. STANDARD OF REVIEW

This matter comes before the Court on a motion for summary judgment. (Doc. 20). The Court will therefore apply a summary judgment standard in determining this Court's jurisdiction to hear this matter. This is appropriate as the discovery deadline has passed and the parties have submitted evidence in this case.[4] *See Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724, 737 (D.N.J. 2017). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477

---

[3] The Court also requested supplemental briefing on the issue of agency deference. However, because the Court here finds Ms. Emel has failed to establish standing, the Court will not consider the parties' agency deference arguments. (Doc. 29; Doc. 30; Doc. 32; Doc. 33).

[4] Along with her supplemental briefing Ms. Emel has submitted an affidavit addressing her standing to bring this action. (Doc. 30-1). In the affidavit, Ms. Emel details the harm she suffered as a result of the Email. (Doc. 30-1).

U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*,

4

477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

### 3.  ARTICLE III STANDING

Before addressing the merits of Ms. Emel's claims, the Court must ensure it retains jurisdiction over this matter under Article III of the U.S. Constitution. *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 356 (3d Cir. 2018). Under Article III, federal courts have jurisdiction to hear "cases" and "controversies." *Lutter v. JNESO*, 86 F.4th 111, 123 (3d Cir. 2023) Thus, for a plaintiff to bring an action in federal court, they must have a "personal stake," in a "case" or "controversy." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). This is known as Article III standing.

To establish Article III standing, a plaintiff must allege they suffered "(1) a concrete, particularized, and actual or imminent injury, (2) that was likely caused by the defendant, and (3) would likely be redressable by a favorable judicial decision." *Morales v. Commonwealth Fin. Sys., Inc.*, No. 22-3388, 2023 WL 8111458, at *2 (3d Cir. Nov. 22, 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC*, 594 U.S. at 423 (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). A plaintiff's injury must be concrete, meaning "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016). However,

a concrete injury may be either tangible, such as physical or monetary harm, or intangible, such as reputational harm. *TransUnion LLC*, 594 U.S. at 425. This case deals with the latter.

To establish an intangible concrete injury, courts look to whether the alleged injury resembles "a close historical or common-law analogue."[5] *TransUnion LLC*, 594 U.S. at 424. The Third Circuit has concluded the nearest common-law analogue for claims brought under Section 1692(e) of the FDCPA is the tort of fraudulent misrepresentation. *Huber v. Simon's Agency, Inc.* 84 F.4th 132, 148 (3d Cir. 2023); *Morales*, 2023 WL 8111458, at *2. Further, the "'harm traditionally recognized as providing a basis for [fraudulent misrepresentation] in American courts' is not the mere receipt of a misleading statement, or even confusion, without any further consequence. It is the 'physical, monetary, or cognizable intangible harm.'" *Huber*, 84 F.4th at 148 (internal citations omitted). Accordingly, to sustain standing to bring her FDCPA claims, Ms. Emel must establish she suffered an injury stemming from the tort of fraudulent misrepresentation. *Huber*, 84 F.4th at 148. More precisely, Ms. Emel must allege

---

[5] In an attempt to better adapt the law to the Information Age, the Supreme Court has found that the nondisclosure of information can qualify as a concrete injury. *See Pub. Citizen v. DOJ*, 491 U.S. 440, 448–49 (1989); *see also FEC v. Akins*, 524 U.S. 11, 13–14, 21 (1998). This has become known as the "informational injury doctrine." *Huber v. Simon's Agency, Inc.* 84 F.4th 132, 145 (3d Cir. 2023). For the informational injury doctrine to apply, the Third Circuit has specified that a plaintiff must assert they were denied information they were legally entitled to obtain. *Kelly v. RealPage Inc.*, 47 F.4th 202, 212 (3d Cir. 2022). In this case, the parties agree that the Third Circuit's decision in *Huber v. Simon's Agency, Inc.* precludes Ms. Emel from establishing standing based on an alleged "informational injury." (Doc. 29, at 4-5; Doc. 33, at 2); 84 F.4th at 149. Accordingly, the Court will cabin its inquiry to whether Ms. Emel has sufficiently alleged harm akin to a common-law analogue.

that she was harmed by a "consequential action or inaction following receipt of [Defendants'] debt collection [email.]" *Huber*, 84 F.4th at 149.

According to her complaint, Ms. Emel was harmed by the Email because it put her "at material risk of making a partial payment and thereby unknowingly recommencing the lapsed statute of limitations" on her debt. (Doc. 1, ¶ 33). Importantly, Ms. Emel has not put forth any evidence that she made a partial payment on her stale debt or that she was otherwise injured by failing to act in response to the Email.[6] (Doc. 1). Instead, she provides only that she "suffer[ed] concrete and particularized harm, inter alia, because the FDCPA provides Plaintiff with the legally protected right to be not to be misled or treated unfairly with respect to any action for the collection of any consumer debt" and that "Defendants' actions created an appreciable risk to Plaintiff of being unable to properly respond or handle Defendants' debt collection." (Doc. 1, ¶¶ 36, 38). These allegations are insufficient to establish standing, as the "'mere risk' that a plaintiff who receives a misleading letter from a debt collector will suffer such a cognizable injury is 'too speculative to support Article III standing.'" *Huber*, 84 F.4th at 149 (quoting *TransUnion LLC*, 594 U.S. at 436). At this point in the litigation, Ms. Emel concedes this point. (Doc. 33, at 2).

In response to new precedent, Ms. Emel now posits a new theory of harm supported by an affidavit. (Doc. 30-1; Doc. 33, at 2-3). Ms. Emel now argues she was injured by her decision not to pay down her debt due to confusion caused by the Email. (Doc. 30, at 5; Doc.

---

[6] In fact, in an affidavit, Ms. Emel provides that she "did not pay on the Debt as a result of [her] confusion about the Disputed Language." (Doc. 30-1, ¶ 8).

33, at 3). Ms. Emel provides, "Plaintiff was confused by the language in the letter, and, as a direct result of that confusion, was unable to adequately respond to the letter's[7] [sic] demand for payment and failed to pay it." (Doc. 33, at 3). This theory of harm does not work in this case. The Third Circuit is clear, "confusion, without more, is not a concrete injury. Instead, to analogize to the tort of fraudulent misrepresentation, a § 1692e claimant must suffer some cognizable harm that flows from that confusion." *Huber*, 84 F.4th at 149. Moreover, this lawsuit stems from Ms. Emel's belief that the Email was misleading because *had* she responded to it by making a partial payment, Ms. Emel would have unknowingly exposed herself to liability. (Doc. 1; Doc. 30-1). In other words, Ms. Emel's entire case is based on the potential harm she could have faced if she had acted in response to the Email. (Doc. 1). She cannot now for the sake of standing argue that she was injured by *not* responding to the Email. (Doc. 33, at 2).

To sustain her new theory of standing, Ms. Emel relies on the Third Circuit's decision in *Huber v. Simon's Agency Inc.* 84 F.4th 132. (Doc. 33, at 2). In *Huber*, the court found that a FDCPA plaintiff had standing because she sufficiently alleged she was injured by failing to take action in response to an allegedly misleading debt collection letter. 84 F.4th at 149. The plaintiff argued that because the letter supplied two different "amounts" due, she was unsure how much she owed and thus paid a financial advisor to help her figure it out. *Huber*, 84 F.4th

---

[7] Throughout her supplemental briefing Ms. Emel refers to a "letter" she received from Defendants. (Doc. 30; Doc. 33). The record is clear, however, that at issue is a debt collection email. (Doc. 21). The Court notes this discrepancy for the sake of clarity.

at 142. According to the *Huber* court, the plaintiff established she was harmed as a result of the confusion caused by the letter because she hired the financial advisor "at her own cost" and subsequently failed to "pay down her debts or otherwise take appropriate action." 84 F.4th at 149. Notably, the *Huber* plaintiff had live debt, unlike the stale debt at issue in this case. 84 F.4th at 149.

Put more broadly, the *Huber* court concluded that, to establish standing, an FDCPA plaintiff alleging harm based on confusion must demonstrate that the confusion caused them to alter their relationship with their outstanding debt. *Huber*, 84 F.4th at 149. Otherwise, the plaintiff must show that they suffered financial harm by incurring costs to resolve the confusion. *Huber*, 84 F.4th at 149. In *Huber*, the plaintiff alleged both. 84 F.4th at 149. Here, Ms. Emel has not shown either. As discussed *supra*, this case is premised on the presumption that Ms. Emel *would have* suffered adverse consequences *had she* paid on her time-barred debt. (Doc. 1). Ms. Emel has not shown that by failing to respond to the Email by "pay[ing] down her debts or otherwise tak[ing] appropriate action," she altered her relationship with her debt.[8]

---

[8] Ms. Emel acknowledges this in her supplemental briefing, conceding that her filings fail to establish "the kind of direct financial harm that the plaintiff in *Huber* was able to establish in terms of the additional cost to her of hiring a financial advisor[.]" (Doc. 30, at 5). Ms. Emel also recognizes that her filings fail "to establish the kind of tangible pecuniary harm that both the Third Circuit and the U.S. Supreme Court have admonished [sic] are so easily identified by the courts." (Doc. 30, at 5); *see e.g., Linnabary v. Sequium Asset Sols., LLC*, No. 2:22-CV-01565-CCW, 2024 WL 404530 (W.D. Pa. Feb. 2, 2024) (recognizing the following allegations to support plaintiff suffered harm by an allegedly misleading debt collection letter when suing under Section 1962(e) of the FDCPA: "failing to pay the debt or take appropriate action, suffering from emotional distress, feeling extremely upset, fighting with her spouse, losing time, and purchasing Tylenol."). Whereas Ms. Emel then attempts to argue she has established "the kind of financial consequence that the Third Circuit in *Huber* found is an *(footnote continued on next page)*

*Huber*, 84 F.4th at 149. Futhermore, the record does not support that Ms. Emel suffered any financial harm to resolve her confusion, as there is no evidence she paid a financial advisor for assistance or otherwise exposed herself to liability on her debt.[9] Accordingly, Ms. Emel has failed to demonstrate she suffered an injury, financial or otherwise. *See Morales*, 2023 WL 8111458, at *2-3 (finding plaintiff lacked standing to bring her claim under the FDCPA where she failed to allege she suffered any harm as a result of receiving the allegedly misleading debt

---

independent font of standing, to wit, 'inaction' that carries with it financial consequences," without any evidence supporting she suffered a financial consequence, the Court is not convinced.[8] (Doc. 1; Doc. 30, at 5); *see Rohl v. Pro. Fin. Co., Inc.*, 21-17507, 2022 WL 1748244, at *4 (D.N.J. May 31, 2022) (finding lack of standing where the plaintiff alleged that the defendant "used misleading representations" in a collection letter in violation of the FDCPA because the plaintiff did not "allege that she relied on [the defendant's] representation" or allege any "additional harm" due to the collection letter).

[9] Whereas Ms. Emel does not explicitly argue that she was injured by the Email through because she was compelled to pursue this lawsuit, she appears to make this allegation in her complaint. (Doc. 1, ¶ 34). Bringing a lawsuit does not establish standing. *See Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 639 (7th Cir. 2023) ("[Plaintiff's] decisions to hire an attorney and pay an appearance fee are insufficient to establish standing. . .That is, '[a] desire to obtain legal advice is not a reason for universal standing.' Indeed, hiring counsel should yield advice for the client to resolve confusion. Choice's decision to retain counsel fails to establish concrete injury." (internal citations omitted)); *see also K.K.-M. v. New Jersey Dep't of Educ.*, No. CV1711579RBKKKMW, 2018 WL 3105416 (D.N.J. June 25, 2018), *vacated and remanded sub nom. K.K.-M. v. New Jersey Dep't of Educ.*, 801 F. App'x 848 (3d Cir. 2020) ( "One cannot simply create a 'concrete and particularized ... actual or imminent' harm by their voluntary action of hiring counsel—to allow as much would be to open the floodgates and drown the courts in myriad lawsuits, none of which would otherwise be allowed to proceed due to lack of standing." The Third Circuit "agree[d] with the reasons set forth by the District Court for determining that the standing requirements are not satisfied" but remanded the cases on the basis that it should have been dismissed without prejudice and the District Court erred in failing to do so.)

10

collection letter. "Mere confusion and the speculative risk of a lawsuit are not enough to confer standing to an FDCPA plaintiff."). [10]

      Because Ms. Emel has failed to demonstrate she suffered any harm because of the Email, this Court finds she has failed to establish Article III standing. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 775, 215 L. Ed. 2d 46 (2023) ("[Plaintiff] argues that [Debt Collector's] deceptive letter created a risk that she might make a payment on a time-barred debt, and a payment—or even a promise to pay—risked restarting the limitations period. [ ]. But critically, [Plaintiff] didn't make a payment, promise to do so, or other-wise act to her detriment in response to anything in or omitted from the letter. . . [Plaintiff's] response to the letter was to call [Debt Collector] to dispute the debt and to contact a lawyer for legal advice. These are not legally cognizable harms." (internal citations omitted)); *see also Chang v. Frontline Asset Strategies, LLC*, No. CV 18-2388 (MAH), 2024 WL 1209184, at *6 (D.N.J. Mar. 21, 2024) (finding FDCPA plaintiffs lacked standing to bring their claims under Section 1692(e) because their complaints were "devoid of any mention of incurred expenses, actions taken, or possible inactions as a result of the letters."). Accordingly, the Court does not have jurisdiction to hear this matter and will not opine on the merits of Ms. Emel's claims. Her complaint is to be **DISMISED**.

---

[10] In the non-precedential case *Morales v. Commonwealth Financial System Inc.,* the Third Circuit concluded: Plaintiff "has not pled any facts showing either that she relied upon [Debt Collector's] letter or that she suffered any consequence flowing from that reliance. Reading her complaint in the most favorable light, [Plaintiff] has simply shown she received an allegedly misleading letter — nothing more." 2023 WL 8111458, at *3. The same reasoning applies to the facts at bar.

4.  **CONCLUSION**

Based on the foregoing, Defendants' motion for summary judgment is **GRANTED** (Doc. 20) and Ms. Emel's complaint is **DISMISSED**. (Doc. 1). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


**Dated: April 30, 2024**                    *s/ Karoline Mehalchick*
                                                           **KAROLINE MEHALCHICK**
                                                           **United States District Judge**